**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**MICHAEL CLARK,**
**ELIZABETH G. THOMPSON,**
**ROOSEVELT KITCHEN,**
**DENNIE JOHNSON,**

**Plaintiffs,**

**v.** **Civil No. 4:05cv158**

**CARLAND, INC., and**
**RONALD B. NEFF, JR.,**

**Defendants.**

**MEMORANDUM OPINION & ORDER**

Presently before the Court are two motions filed by Defendants Carland, Inc. ("Carland"), and Ronald Neff, Jr. ("Mr. Neff"): (1) Motion for Summary Judgment and (2) Motion in Limine. The former seeks to dismiss this action in its entirety, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to Plaintiffs Michael Clark and Roosevelt Kitchen. The latter seeks to exclude from trial all evidence and testimony relating to an investigation conducted by the Virginia Motor Vehicle Dealer Board ("Board") following allegations that Mr. Neff violated Virginia law as a licensed car dealer. For the reasons stated herein, the Motion for Summary Judgment is **DENIED**, and the Motion in Limine is **DENIED**. Plaintiffs may introduce those Board findings that the Court deems relevant to this action.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

This case concerns four individuals employed by the United States Marine Corps stationed at Camp Lejeune in North Carolina, each of whom had independent, but virtually

identical, experiences with Defendants.[1] Carland is a used car dealership located in York County, Virginia. In late 2003 and early 2004, Michael Clark, Roosevelt Kitchen, Dennie Johnson, and Elizabeth Thompson independently contacted Carland in response to business cards and other advertisements that had been placed in and around Camp Lejeune. During the phone conversation, Plaintiffs inquired generally about the purchase of a vehicle, and, at Carland's request, provided personal identifiers including social security numbers. Following this initial contact, Carland provided Plaintiffs with transportation from Camp Lejeune to the dealership located approximately 3.5 hours away. Allegedly, Plaintiffs were never informed of the dealership's location.

Upon Plaintiffs' arrival to the dealership, Mr. Neff informed Plaintiffs that transportation would not be available for their return to Camp Lejeune unless they purchased a used vehicle. Consequently, to meet their Marine Corps obligations, each Plaintiff executed a purchase agreement, related finance documents, and other various contracts to secure the purchase of a vehicle, which Plaintiffs allege they would not have bought but for their inability to return to North Carolina. Moreover, Plaintiffs allege that Carland and Mr. Neff made a number of false representations and warranties that form the basis of this action.

Plaintiffs collectively allege the following counts in this civil action against Defendants: (Count I) Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; (Count II) Violation of the Federal Vehicle Cost Savings and Information Act, 49 U.S.C. §§ 32701–32711 et seq.; (Count III) Violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200.5, 200.8, and 200.14; and (Count IV) common law fraud and misrepresentation.

---

[1] Although the facts of this case are in dispute, for purposes of summary judgment, the Court will view the facts in the light most favorable to the nonmoving party, Plaintiffs. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

**B. Procedural Posture**

Plaintiffs individually filed separate complaints in this Court between November 22, 2005, and February 23, 2006, against Carland, Mr. Neff, and Grayson Financial America, Inc. ("Grayson"). The three named defendants jointly answered each complaint between December 23, 2005, and March 23, 2006. On May 30, 2006, the Court consolidated the individual cases pursuant to Rule 42 of the Federal Rules of Civil Procedure. On January 31, 2007, the parties filed a Stipulation of Dismissal as to Grayson, leaving only Carland and Mr. Neff as defendants.

The instant Motion for Summary Judgment was filed by Defendants on January 11, 2007, to which Plaintiffs were required to reply on January 29, 2007, after the parties mutually agreed to extend Plaintiffs' response time. However, on January 29, Plaintiffs filed a Motion to Extend the Time to File Responsive Pleadings and Brief to Defendants' Motion for Summary Judgment, and filed such response on January 30, 2007. On January 31, 2007, Plaintiffs filed (1) a Corrected Memorandum in Opposition to Defendants' Motion for Summary Judgment, (2) a Motion to Withdraw and for Leave to File a Corrected Memorandum in Opposition to Defendants' Motion for Summary Judgment, and (3) a Motion for Leave of Court to Extend the Page Limitations for the Memorandum in Opposition to Defendants' Motion for Summary Judgment. Defendants filed a rebuttal on February 5, 2007. Because the outstanding motions filed by Plaintiffs on January 29 and 31 are merely procedural in nature and have not prejudiced Defendants in any way, they are hereby **GRANTED**.

On February 14, 2007, Defendants filed two Motions in Limine seeking to exclude from trial all evidence (1) relating to publications, news media, and internet web sources relating to Defendants' alleged wrongdoing, and (2) relating to the investigations of Mr. Neff conducted by the Virginia Motor Vehicle Dealer Board. Plaintiffs conceded the former motion relating to

news media, thereby rendering it moot; however, Plaintiffs filed an objection to the latter motion on February 20, 2007.

A final pretrial conference was conducted by this Court on February 20, 2007, at which time the parties presented oral argument concerning both the Motion for Summary Judgment and unresolved Motion in Limine. Both motions are ripe for resolution, and are considered in turn.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Framework

Summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The purpose of summary process is to avoid a clearly unnecessary trial," Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)), and "it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial." Continental Can Co., 948 F.2d at 1265.

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). The moving party has the threshold burden of informing the court of the basis for the motion, of establishing that there is no genuine issue of material fact, and of showing that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Castillo v. Emergency Med. Assoc., 372 F.3d 643, 646 (4th Cir. 2004).

Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. at

322–23. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotations omitted). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that a genuine issue of material fact exists. See id. at 324.

### B. Analysis

Defendants contend that deposition statements made by Plaintiffs Clark and Kitchen on September 26, 2006, constitute "admissions that negate all of the claims contained in their Complaint." Defs.' Supp. Mem. at 5. Plaintiffs respond by arguing that summary judgment is inappropriate at this stage of the litigation in light of the multitude of disputed material facts that could reasonably lead a juror to find in their favor. Pls.' Resp. at 11–23.

The Court agrees with Plaintiffs, who have met their burden to defeat summary judgment by setting forth specific facts to show genuine issues for resolution at trial. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment, but reserves the right to enter summary judgment if the evidence presented at trial dictates judgment in favor of Defendants as a matter of law. Such relief is inappropriate at this time.

## III. MOTION IN LIMINE

Defendants next move the Court to exclude from trial all evidence and testimony relating to the investigation conducted by the Virginia Motor Vehicle Dealer Board resulting from allegations by individuals and state officials that Mr. Neff violated Virginia law and engaged in

unfair or unethical business practices as a licensed dealer. Plaintiffs oppose this motion and seek to introduce the Board's findings of fact and conclusions of law as evidence of Defendants' civil wrongdoing. Moreover, Plaintiffs contend that Defendants are colaterally estopped from disputing those issues considered and resolved by the Board. Thus, the questions before the Court on this motion are as follows: (1) What were the nature, circumstances, purpose, and conclusions of the Board's investigation? (2) Are the Board's findings of fact and conclusions of law admissible evidence and, if so, on what basis? (3) Are Defendants collaterally estopped from disputing those issues addressed and decided by the Board?

**A. Facts: The Board Investigation**

1. Nature & Circumstances

On January 22, 2004, the Board conducted an "Informal Fact Finding Conference" in Richmond, Virginia, to address allegations that Mr. Neff's business practices as a licensed dealer violated Virginia law. Laurie Riddles, a Hearing Officer, presided over the investigation and ultimately issued a Recommendation—containing both findings of fact and conclusions of law—to the Executive Director of the Board, Bruce Gould. Both Mr. Neff and his attorney, Robert Byrum, participated in the conference. Evidence presented before the Board included live witness testimony and "sworn statements by members of the U.S. Armed Forces stations at either Fort Bragg or Camp Lejeune . . . ." Defs.' Mem. Supp. Mot. Limine Ex. A at 1 (hereinafter cited as "Recommend."). Notably, the list of individuals submitting sworn statements included all four Plaintiffs in this litigation: Michael Clark, Roosevelt Kitchen, Dennie Johnson, and Elizabeth Thompson. Id. A court reporter was present at the conference and transcribed the testimony of the sworn witnesses.

Following Ms. Riddles' Recommendation, Mr. Gould "carefully considered the findings

of fact, the conclusions of law, and the evidence presented at the conference, the testimonies that were given and the hearing officer's report." Defs.' Mem. Supp. Mot. Limine Ex. B at 3. Without exception, Mr. Gould adopted the Recommendation's findings of fact and conclusions of law in their entirety and revoked Mr. Neff's certificates and licenses for violations of sections Virginia Code Sections 46.2-1575(2), (6), (7). He concluded by informing Mr. Neff of the right to appeal, which Mr. Neff apparently did not pursue.

2. Purpose & Scope

As stated by Ms. Riddle, "[o]ne purpose of the conference was to determine if Mr. Neff had violated the following Virginia statutes: Va. Code Sections 46.2-1575(1); 46.2-1529; 46.2-1529.1(A); 46.2-1529.1(B); 46.2-1535 and 46.2-1550.1. Another purpose was to determine if Mr. Neff's alleged practices warranted action pursuant to Va. Code Sections 46.2-1575(1); 46.2-1575(2); 46.2-1575(4); 46.2-1575(6); 46.2-1575(7); 46.2-1575(12) and 46.2-1507." Recommend. at 1.

As evidenced by this statement of purpose, the Board's investigation concerned a broad array of alleged wrongdoings by Mr. Neff, only some of which relate to Plaintiffs' claims. Having examined the content and scope of these Virginia statutes, the Court finds that the Board's investigative conference is relevant only with respect to the following provisions relating to deceptive acts, omissions, or misrepresentations: 46.2-1529.1(A); 46.2-1529.1(B); 46.2-1535; 46.2-1575(4); 46.2-1575(6); and 46.2-1575(7).[2] The remaining statutory provisions

[2] Section 46.2-1529.1(A), relating to written disclosures of warranty, provides as follows:

> If, in any retail sale by a dealer of a used motor vehicle of under 6,000 pounds gross vehicle weight for use on the public highways, and normally used for personal, family or household use, the dealer offers an express warranty, the dealer shall provide the buyer a written disclosure of this warranty. The written disclosure shall be the Buyer's Guide required by federal law, shall be completely filled out and, in addition, signed and dated by the buyer and incorporated as part of the buyer's order.

addressed during the investigation, relating principally to Mr. Neff's use (or misuse) of dealer plates, are irrelevant to this action and warrant no further discussion.

2. Findings of Fact & Conclusions of Law

The Board Recommendation, authored by Ms. Riddle and adopted in full by Mr. Gould, is replete with factual findings and legal conclusions. However, the Court will consider only the following relevant portions of the Recommendation:

(1) "Findings of Fact In Re: Va. Code Sections 46.2-1535; 46.2-1575(4); 46.2-1575(6) and 46.2-1575(7)," Recommend. ¶¶ 1–24 at 6–13;

(2) "Conclusions of Law" relating thereto, Id. ¶¶ 1–3 at 13–14; and

---

Section 46.2-1529.1(B), relating to disclaimer of warranty, provides as follows:

> A dealer may sell a used motor vehicle at retail "AS IS" and exclude all warranties only if the dealer provides the buyer, prior to sale, a separate written disclosure as to the effect of an "AS IS" sale. The written disclosure shall be conspicuous and contained on the front of the buyer's order and printed in not less than bold, ten-point type and signed by the buyer: "I understand that this vehicle is being sold 'AS IS' with all faults and is not covered by any dealer warranty. I understand that the dealer is not required to make any repairs after I buy this vehicle. I will have to pay for any repairs this vehicle will need." A fully completed Buyer's Guide, as required by federal law, shall be signed and dated by the buyer and incorporated as part of the buyer's order.

Section 42.6-1535 pertains to dealer advertisements and provides as follows:

> Unless the dealer is clearly identified by name, whenever any licensee places an advertisement in any newspaper or publication, the abbreviations 'VA DLR,' denoting a Virginia licensed dealer, shall appear therein.

Section 42.6-1575 authorizes the board to deny, suspend, or revoke a licence or certificate of dealer registration or qualification for any one or more of the following grounds:

> (4) Defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's or registrant's business;
>
> (6) Having used deceptive acts or practices;
>
> (7) Knowingly advertising by any means any assertion, representation, or statement of fact which is untrue, misleading, or deceptive in any particular relating to the conduct of the business licensed or registered or for which a license or registration is sought;

(3) "Discussion and Recommendation," Id. at 14.

All other findings by the Board are inadmissible as irrelevant.[3]

In relevant part, the Board concluded that Mr. Neff (1) violated section 46.2-1535 by failing to clearly identify his dealership's name or status in published advertisements; (2) engaged in deceptive business practices "as anticipated by" section 46.2-1575(6); and (3) knowingly advertised his business with untrue, misleading, or deceptive assertions, representations, or statements of fact, in violation of section 46.2-1575(7). In her conclusion to the Recommendation, Ms. Riddle stated as follows:

> In the above paragraphs I have articulated those actions and practices which taken altogether constitute deception of the complainants. . . . Even the most ardent proponent of the philosophy of "Buyer beware" could not help but find Mr. Neff's dealings an[sic] unacceptable. The tactics which he used to lure the complainants to his dealership were obviously intentional and unconscionable deceptions which placed stranded customers under undue duress to buy a vehicle. I believe that Mr. Neff's advertisements about "full coverage," his assertions during negotiations and deliberate falsehoods as an On Line dealer about liability coverage misled and harmed his patrons. Mr. Neff, in his overreaching practices violated many Virginia statues governing the industry. His practices are a disservice to the reputation and credibility of the other members of the automobile sales industry. He has harmed so many of our young service men and women by his actions.

Recommend. at 14. This conclusion evidences the Board's finding that Mr. Neff engaged in deceptive, dishonest, and unlawful business practices as a licensed dealer in Virginia. The next question for the Court, however, is whether such agency findings are admissible as evidence in a

---

[3] The Court will not consider, and deems inadmissible, the following sections contained in the Recommendation:

(1) "Findings of Fact In Re: Va. Code Sec. 46.2-1575(1)," Recommend. ¶ 1 at 2;

(2) "Findings of Fact In Re: Va. Code Sections 46.2-1529; 46.2-1575(2); 46.2-1575(12)," Recommend. ¶¶ 2–17 and 11–13 at 2–5; and

(3) "Conclusions of Law In Re: Va. Code Sections 46.2-1529; 46.2-1575(2) and 46.2-1575(12)," Recommend ¶¶ 1–6 at 5.

subsequent civil action based on the same or similar allegations of deception and fraud.

**B. Admissibility of Evidence**

1. Hearsay and the Public Records Exception (FRE 803(8)(C))

The first conceivable objection to the Board's Recommendation and Decision is that they constitute inadmissible hearsay. Hearsay—"a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"—is inadmissible unless an exception applies. Fed. R. Evid. 801(c), 802. In this case, the parties do not dispute that such an exception exists. Rule 803(8)(C), the "public records" exception, allows the admission of hearsay evidence in the form of "[r]ecords, reports, statements, or data compilations, in any form of public offices or agencies, setting forth . . . (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8).

As the parties do not dispute the applicability of Rule 803(8)(C), the Court finds that those portions of the Board's Recommendation and Decision relevant to Plaintiffs' claims are admissible despite their hearsay nature. Adequate case law supports such a holding. See, e.g., Zeus Enter., Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999); Rambus, Inc. v. Infineon Tech. Ag., 222 F.R.D. 101, 107 (E.D. Va. 2004).

2. Prejudice vs. Probative Value (FRE 403)

Defendants primarily dispute the admissibility of the Board's Recommendation "for its prejudicial effect," rendering it inadmissible under Rule 403 of the Federal Rules of Evidence. Although all evidence offered against a party is prejudicial, Rule 403 is a mechanism by which relevant and otherwise admissible evidence may be excluded "if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Rule 403 aims to avoid the admission of evidence that may invade the province of the jury as fact-finder. Where this risk of jury usurpation is substantial, Rule 403 should work to preserve the jury's role as trier of fact. Defendants contend that if the jury is provided with the Board's findings and conclusions, it may abandon its role and simply conclude that the Board sufficiently resolved the facts of this case. To support this position, Defendants rely upon Rambus, Inc. v. Infineon Technologies, in which the United States District Court for Eastern District of Virginia employed Rule 403 to exclude an Administrative Law Judge's report finding that the defendant—the party seeking to introduce the report—had not engaged in the unlawful conduct alleged by the plaintiff. 222 F.R.D. at 105–06. Thus, the question in Rambus was identical to the question now before this Court: to what extent may Rule 403 bar evidence of a prior agency hearing resolving questions of fact to be decided by a jury in subsequent civil action? In excluding the agency report, the court in Rambus found that "the jury, when confronted with the [prior agency] Decision, likely would give undue weight to the findings of the ALJ." Id. at 110 (citing Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) (upholding trial court's decision under Rule 403 to exclude a state agency's report because the "jury would have placed undue weight on such evidence")). Moreover, the court concluded that "the jurors' ability to reach their own determinations respecting the facts at issue in this case would be undermined by the admission of the [agency] Decision." Id. (citing United States v. MacDonald, 688 F.2d 224, 230 (4th Cir. 1982) (upholding trial court's decision under Rule 403 to exclude an executive branch investigator's findings and conclusions because the report

"tend[ed] to undermine the exclusive province of the jury")).

In light of Rambus, it might arguably appear as though protection of the jury's province should be the Court's sole motivation in deciding the Rule 403 question under these circumstances. But upon more careful examination in context with Zeus Enterprises, Inc. v. Alphin Aircraft, Inc., it is evident that Rambus does not stand for such a proposition. In Zeus, the plaintiff filed suit for breach of a contract that required the defendant to restore an airplane to an "airworthy condition." Zeus, 190 F.3d at 240. At trial, the court rejected the defendant's Rule 403 objection, and permitted the plaintiff to introduce an agency report finding that the repaired plane at issue was, in fact, "not airworthy." Id.

In sustaining the trial court's decision, the United States Court of Appeals for the Fourth Circuit noted that the defendant "was permitted to intervene in this [prior agency] proceeding for the purpose of explaining and defending the technical aspects of its repair work. During the course of the [agency] hearing, [the defendant] introduced evidence and cross-examined witnesses." Id. Moreover, the court stated as follows:

> We do not believe the admission of the [agency] decision caused unfair prejudice that outweighed its probative value. At trial [the defendant] introduced evidence to contradict the ALJ's findings, directed the jury to this evidence in closing, and argued forcefully to the jury that the ALJ's decision should be given "little weight." Finally, the district court instructed the jury that the ALJ's decision "is not conclusive on the issue you have before you. But it should be considered along with all the other evidence in the case." In these circumstances . . . we are satisfied that it did not lead the jury to conclude that [the agency] decision was dispositive of the issue before it.

Id. at 243 (emphasis added). Of critical importance to the Fourth Circuit's decision was the ability of the prejudiced party to participate in the prior agency hearing and contradict the agency's findings at trial, which minimized the risk that the agency findings would be untrustworthy or unchallenged by the adversarial process so essential to the United States

judicial system. Moreover, the trial court's limiting jury instruction sufficiently avoided the risk that such evidence would invade the province of the jury.

A more careful reading of Rambus reflects that Rule 403 is most appropriate to exclude an agency's public record when the party to be prejudiced thereby is unable to confront or contradict the agency decision. Unlike the prejudiced party in Zeus (the defendant), the prejudiced party in Rambus (the plaintiff) had not participated in the prior agency decision, and was unable to address the agency's decision fully at trial. In distinguishing itself from Zeus, the court in Rambus stated as follows:

> The contrary result reached in Zeus is not applicable here. In Zeus, the Fourth Circuit rejected [the defendant's] argument that the jury gave the ALJ's decision too much weigh because, at trial, [the defendant] had been allowed to introduce evidence to contradict the ALJ's findings and the jury had been instructed that the ALJ's report was not dispositive in the civil case. Here, [the plaintiff] has been foreclosed not only from the complete text of the ALJ's report (the public version being redacted), but also has not even had access to all of the evidence underlying the [agency] Decision because much of it was admitted, and discussed, *in camera*. Under those circumstances, it is unrealistic to expect that [the plaintiff] could show a jury how the ALJ's report was in error. In other words, lacking access to the underlying information, [the plaintiff] would be hard-pressed to demonstrate to the jury that it should reject the [agency] Decision.

Rambus, 222 F.R.D. at 110 (emphasis added). Because the prejudiced party in Rambus did not have an opportunity to participate in the agency hearing that yielded the evidence, and could not even access the evidence underlying the agency's decision at trial, the court deemed the agency report unduly prejudicial pursuant to Rule 403.

Finally, in addition to the considerations articulated in Zeus—(1) the ability of the prejudiced party to participate in the prior agency hearing, (2) the ability of the prejudiced party to challenge the agency decision at trial, and (3) the court's limiting jury instruction—a final consideration, (4) the nexus of agency findings with the subsequent civil claims, is relevant to

the Rule 403 question. In Rambus, the court excluded the agency findings in part because "much of the [agency] Decision involved issues not presented by the [plaintiff's] claims. . . . [I]f the [agency] decision were admitted here, [the plaintiff] would be required to address issues not presented by its claim or its evidence." Id. at 110. Thus, if an agency report considers too many issues unrelated to the civil litigation, its admission as evidence risks confusing the jury, and may be excluded under Rule 403. Because this Court has already selectively identified which portions of the Board's Recommendation are relevant to this claim, there is no reason to exclude the evidence on the basis of potential jury confusion.

In light of the facts and circumstances of this case, the Court finds that the Board's Recommendation and Decision are admissible notwithstanding the Rule 403 concerns. First, the party to be prejudiced by this evidence, Mr. Neff, had an ample opportunity to participate in the Board's hearing. Indeed, as noted in the Recommendation and Decision, Mr. Neff was present before the Board on June 22, 2004, with his attorney, Mr. Byrum, and participated in the investigative conference. Additionally, Defendants will have an opportunity at trial to introduce evidence to challenge the Board's findings, direct the jury to any contradicting evidence, and argue that the Board's decision should be given minimal weight. Moreover, this Court has limited the Board's findings to those issues that are directly relevant to Plaintiffs' claims. The nexus between the Board's findings (as limited by this Court) and the civil claims creates no risk of jury confusion as contemplated by Rule 403. Finally, the Court may sufficiently fashion jury instructions to curtail any risk of the jury attributing undue weight to the Board's findings.

Because the Board's Recommendation and Decision fall within the "public records" exception to the Hearsay Rule and is not unduly prejudicial to Defendants, it is admissible. Accordingly, the Court **DENIES** Defendants' Motion in Limine to exclude the Board's

Recommendation and Decision, and will permit Plaintiffs to introduce the Board's findings as evidence at trial, but only to the extent that such findings have been deemed relevant by this Court.

**C. Collateral Estoppel**

In addition to urging the Court to admit the Board's Recommendation and Decision into evidence at trial, Plaintiffs offensively assert that Defendants are "collaterally estopped from challenging the factual and legal determinations" made by the Board. Pls.' Opp. at 2. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a difference cause of action involving a party to the first case." Allen v. McMurry, 449 U.S. 90, 94 (1980) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). The purpose of collateral estoppel, also known as issue preclusion, is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. Courts allow "a litigant who was not a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case." Id. at 95 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)). However, "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Id. (citing Montana, 440 U.S. at 153; Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 328–29 (1971)). Collateral estoppel is recognized by Virginia law, and may be applied to both state and federal agency adjudication:

> The general principles concerning application of res judicata to agency adjudicatory decisions are well-established and easy to state: (1) In the absence of statutory direction to the contrary, courts will apply res judicata and collateral estoppel to

> agency adjudicatory decisions that resolve disputed issues of fact properly before the agency "which the parties have had an adequate opportunity to litigate," (2) the principle stated in (1) applies to state agencies as well as to federal agencies.

Avery v. Va. Retirement Sys., 520 S.E.2d 831, 837 (Va. App. 1999), rev'd on other grounds on remand, 532 S.E.2d 348 (Va. App. 2000) (citing 2 K. Davis and R. Pierce, Jr., Administrative Law Treatise § 13.3, at 248 (3d. ed. 1994)).

Plaintiffs argue that the Board's findings constitute an "adjudication" to which collateral estoppel applies and precludes Defendants from challenging the Board's findings of fact and conclusions of law.[4] By moving the Court to admit the Board's Recommendation and Decision into evidence at trial and preclude Defendants from relitigating those issues addressed by the Board, Plaintiffs seek to have their proverbial cake and eat it, too. The law does not permit such a result. As noted above, a critical factor in admitting into evidence an agency's resolution of a jury question in a subsequent civil action is the prejudiced party's opportunity, at trial, to contradict and challenge the agency's findings. See Rambus, 222 F.R.D. at 110; Zeus, 190 F.3d at 243. To withdraw such an opportunity would be to tilt the Rule 403 calculus in favor of the prejudiced party and exclude the disputed evidence in the first place—certainly a result Plaintiffs neither desire nor intend. To the extent that this Court has already decided that the Rule 403 factors weigh in favor of admitting the Board's Recommendation and Decision, it will not backpedal and alter the scales of justice. In short, the Board's findings are admissible because

[4] As a threshold matter, the Court is reluctant to categorize the Board's conference as an "adjudication" to which the principle of collateral estoppel may apply. This is particularly so in light of the Court's finding above that the Board's Recommendation and Decision, which constitute hearsay, are admissible under the "public records" exception of Rule 803(8)(C), which applies only when such public records result "from an investigation." Fed. R. Evid. 803(8)(C); see also Zeus, 190 F.3d at 241. By contrast, collateral estoppel applies to issues resolved by "adjudication." Because neither party has raised the issue of whether the Board's hearing constitutes an "investigation" or an "adjudication," the Court will not resolve that question here. However, in light of this tension between Rule 803(8)(C) and collateral estoppel, the Court is doubtful that a party prejudiced by an investigative agency report otherwise inadmissible as hearsay may be collaterally estopped from challenging that report as a prior adjudication.

Defendants will have an opportunity to contradict and address those findings at trial. As such, the Court rejects Plaintiffs' collateral estoppel argument and holds that Defendants will not be precluded from challenging the Board's factual and legal determinations relating to this civil action.

The Clerk of the Court is **DIRECTED** to deliver a copy of this Order to all counsel of record. Moreover, the Clerk is **DIRECTED** to docket the Corrected Memorandum of Plaintiffs Michael Clark and Roosevelt Kitchen in Opposition to Defendants' Motion for Summary Judgment, filed on or about January 31, 2007.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

February 23, 2007
Norfolk, Virginia